**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

NAEEM AHMAD,
      Appellant,

      v.

DEPARTMENT OF VETERANS
  AFFAIRS,
      Agency.

DOCKET NUMBER
CH-1221-12-0462-W-2

DATE: October 17, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Nasim Ahmad</u>, Esquire, Houston, Texas, for the appellant.

<u>Erin Buck Kaiser</u>, Milwaukee, Wisconsin, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial bench decision, which denied his request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact;

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial bench decision to clarify that the parties may only stipulate to facts, but we AFFIRM the chief administrative judge's conclusion that the appellant proved that he made whistleblowing disclosures that were a contributing factor in the agency's decision to terminate him during his probationary period. We FURTHER MODIFY the initial bench decision to find that the Medical Center Director had some motive to retaliate against the appellant, but we AFFIRM the chief administrative judge's finding that the agency proved by clear and convincing evidence that it would have terminated him absent his whistleblowing disclosures. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial bench decision.

## BACKGROUND

¶2    The following facts and chronology, as set forth in the initial bench decision, are generally undisputed. *Ahmad v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-12-0462-W-2, Appeal File-2 (AF-2), Tab 40, Initial Decision (ID). On October 25, 2009, the appellant began working for the agency as a physician. ID at 11; *Ahmad v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-12-0462-W-1, Initial Appeal File (IAF), Tab 6 at 448. On

August 4, 2011, the Acting Chief of Staff received a request to convene a Summary Review Board (SRB)[2] from the Associate Chief of Staff for Primary Care, who was also the appellant's supervisor, to review concerns about the appellant's clinical practices. ID at 11; AF-2, Tab 25 at 30-31. On August 18, 2011, the Associate Chief of Staff for Primary Care conducted a special rating which found that the appellant was unsatisfactory in his duties. ID at 11; IAF, Tab 6 at 239-40. The Associate Chief of Staff for Primary Care made a formal request for the SRB on August 19, 2011, based on the appellant's deficiencies, including but not limited to numerous medication errors, inappropriate comments on patient charts, a high degree of patient complaints and requests to change providers, and improper protection of privacy information. ID at 11; IAF, Tab 6 at 221-22.

¶3        Effective August 20, 2011, the agency suspended the appellant's clinical privileges and placed him on administrative leave while the SRB was pending. ID at 12; IAF, Tab 6 at 217-18. The SRB, comprised of five agency physicians, convened on September 19, 2011, reviewed a binder of evidence and heard from the appellant's attorney. ID at 12-13; IAF, Tab 6 at 203-04, 210, 212-403. The SRB concluded that it had "serious, unanimous concerns about the [appellant's] competency and conduct," and it recommended his termination. ID at 13; IAF, Tab 6 at 203-04. The Acting Chief of Staff reviewed the SRB's recommendation and recommended that the appellant be terminated. IAF, Tab 6 at 201. The Medical Center Director concurred with the SRB's recommendation, and the appellant was terminated during his probationary period, effective October 14, 2011. ID at 13; IAF, Tab 6 at 195, 197-98.

¶4        The appellant filed this IRA appeal, alleging that the agency terminated him during his probationary period because of his whistleblowing disclosures. ID

---

[2] The record reflects that the terms "Summary Review Board" and "Professional Standards Board" are used interchangeably. Hearing Transcript 1 at 192-93. For consistency, we only use the term "Summary Review Board" or SRB.

at 13; IAF, Tab 1. The appeal was dismissed without prejudice and refiled. ID at 13-14; IAF, Tab 18; AF-2, Tab 1. The chief administrative judge found that the appellant exhausted his administrative remedy with the Office of Special Counsel and nonfrivolously alleged that he made protected disclosures that were a contributing factor in the agency's decision to terminate him. ID at 14; AF-2, Tab 12 at 5, Tab 15 at 1-2. The parties entered into several stipulations. ID at 14-15; AF-2, Tab 32 at 2. The chief administrative judge held the requested hearing and issued a bench initial decision. ID at 1, 8-26; Hearing Transcripts (HTs).[3] Based on the parties' stipulations, the chief administrative judge found that the appellant proved by preponderant evidence that he made protected disclosures that were a contributing factor in the agency's decision to terminate him. ID at 14-16; HT-1 at 5 (preliminary remarks of the chief administrative judge). She also concluded that the agency proved by clear and convincing evidence that it would have terminated the appellant absent his whistleblowing disclosures. ID at 16-26. The chief administrative judge therefore denied the appellant's request for corrective action. ID at 1.

¶5      The appellant has filed a petition for review and a supplement to the petition for review, the agency has filed a response, and the appellant has filed a reply. Petition for Review (PFR) File, Tabs 1, 7, 10, 15. On review, the appellant asserts that the chief administrative judge ignored his retaliation theory, "misapplied" the clear and convincing standard, improperly found similarly situated comparators, and excluded evidence of nonwhistleblowers who were treated more favorably. PFR File, Tab 7 at 8-20.[4]

---

[3] The hearing in this case lasted 3 days. Citations to the first day of the hearing (April 21, 2016) are listed as "HT-1," the second day (April 22, 2016) as "HT-2," and to the third day (May 12, 2016) as "HT-3."

[4] Because the appellant's supplemental petition for review includes citations to the hearing transcripts, we refer to this document in our discussion of his arguments on review.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We modify the initial bench decision to clarify that the parties may only stipulate to facts, but we affirm the chief administrative judge's conclusion that the appellant proved that he made whistleblowing disclosures that were a contributing factor in the agency's decision to terminate him.</u>

¶6    To establish a prima facie case of retaliation for whistleblowing disclosures, the appellant must prove by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).[5]

¶7    In the initial bench decision, the chief administrative judge cited to 5 C.F.R. § 1201.63, which states that the parties may stipulate to any matter of fact and the stipulation will satisfy the parties' burden of proving the facts alleged. ID at 15. The chief administrative judge found that the agency "stipulated" to the appellant's "protected disclosures" and to the knowledge/timing components of contributing factor. *Id.* However, the Board has held that whether a disclosure is protected is a matter of law not subject to stipulation. *Wojcicki v. Department of the Air Force*, 72 M.S.P.R. 628, 634 (1996); *see King v. Department of Veterans Affairs*, 105 M.S.P.R. 21, ¶ 16 n.2 (2007) (stating that the parties may stipulate to facts, but not legal conclusions). We modify the initial bench decision to clarify our understanding of the parties' stipulations, i.e., that the parties stipulated to the content and timing of the appellant's two disclosures and that the Medical Center Director had knowledge of the appellant's disclosures before the effective date of the termination.

---

[5] All of the relevant events, including the appellant's termination, occurred before the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012. Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476. We have considered those amendments, but a different outcome is not warranted. We have also reviewed the other relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

¶8	Based in part on the parties' stipulation of facts, we agree with the chief administrative judge that the appellant made a protected whistleblowing disclosure when, in June—July 2011, he disclosed that the Performance Improvement Department was maintaining illegal files on providers and discriminatorily using the information to criticize the providers' work without giving constructive assistance, as well as conducting sham peer reviews. ID at 15; IAF, Tab 24 at 13; AF-2, Tab 12 at 17-27; *see, e.g.*, *Wheeler v. Department of Veterans Affairs*, [88 M.S.P.R. 236](), ¶ 13 (2001) (stating that an abuse of authority occurs when a Federal official or employee arbitrarily or capriciously exercises power that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons).

¶9	We further find that, in August 2011, he made a protected whistleblowing disclosure when he disclosed that a particular doctor and the Veterans Integrated Service Network (VISN) management were mismanaging Federal funds. ID at 15; AF-2, Tab 12 at 10-15; *see White v. Department of the Air Force*, [63 M.S.P.R. 90](), 95 (1994) (explaining that gross mismanagement means a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission).[6]

¶10	Having affirmed the chief administrative judge's determination that the appellant made protected whistleblowing disclosures, we now turn to whether the appellant proved that his whistleblowing disclosures were a contributing factor in the agency's decision to terminate him. One way to demonstrate contributing factor is the knowledge/timing test, which allows an employee to show through circumstantial evidence, such as evidence that the official taking the personnel action knew of the whistleblowing disclosures and the personnel action occurred within a period of time such that a reasonable person could conclude that the whistleblowing disclosures were a contributing factor in the personnel action.

[6] The appellant does not challenge the chief administrative judge's finding that two other disclosures were not protected, and we affirm that finding herein. ID at 14-15.

5 U.S.C. § 1221(e)(1)(A)-(B); *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 11 (2003). The chief administrative judge mentioned the knowledge/timing test in the initial bench decision, ID at 15, and we supplement her analysis herein.

¶11 This case is somewhat unusual in that the appellant's disclosures were made in correspondence that he wrote but that did not bear his name or signature; rather, the correspondence was signed or appeared to be authored by the union president. *E.g.*, AF-2, Tab 24 at 13, 27-43; HT-2 at 366, 373-74 (testimony of the union president). The Medical Center Director, who ultimately decided to terminate the appellant, had knowledge of the correspondence. However, there is conflicting evidence regarding when the Medical Center Director learned that the appellant authored the correspondence that contained the whistleblowing disclosures. *Compare* HT-2 at 374-75 (testimony of the union president that the Medical Center Director knew that it was the appellant who authored the letters at the end of June 2011 or the beginning of July 2011), *with* HT-2 at 257-58 (testimony of the Medical Center Director that he did not learn that the appellant authored the letters until around August 8, 2011, or August 10, 2011). In any event, we need not resolve this discrepancy because the Medical Center Director had such knowledge before the termination notice was issued. IAF, Tab 6 at 197-98.[7] Thus, we find that the knowledge component is satisfied.

¶12 We also find that the timing component of the knowledge/timing test is satisfied because the correspondence containing the appellant's disclosures occurred during the June—August 2011 timeframe, and his termination was effective on October 14, 2011. *See Ormond v. Department of Justice*, 118 M.S.P.R. 337, ¶ 13 (2012) (finding that 6 months between a disclosure and a personnel action was sufficiently proximate to allow a reasonable person to

---

[7] Although the termination letter was signed by another agency employee, IAF, Tab 6 at 198, the parties stipulated that the agency employee signed the letter at the Medical Center Director's behest, ID at 15.

conclude that the disclosure was a contributing factor in the personnel action). We therefore discern no error with the chief administrative judge's conclusion that the appellant proved that his whistleblowing disclosures were a contributing factor in the agency's decision to terminate him. ID at 15-16.

<u>We agree with the chief administrative judge that the agency proved by clear and convincing evidence that it would have terminated the appellant absent his whistleblowing disclosures.</u>

¶13    Because the appellant made out a prima facie case, the agency is given an opportunity to prove by clear and convincing evidence that it would have terminated him during his probationary period in the absence of the whistleblowing disclosures. 5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7. In determining whether the agency has met this burden, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). When conducting an assessment of these factors, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has instructed the Board to "evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).[8]    For

---

[8] Historically, the U.S. Court of Appeals for the Federal Circuit was the only route to appeal a final decision of the MSPB. However, as a result of changes initiated by the Whistleblower Protection Enhancement Act of 2012 (Pub. L. No. 112-199, 126 Stat. 1465), extended for three years (All Circuit Review Extension Act, Pub. L. No. 113-170, 128 Stat. 1894), and eventually made permanent (All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510), appellants may file petitions for judicial review of MSPB decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.

the following reasons, we agree with the chief administrative judge that the agency satisfied this burden.

*The agency's evidence was strong.*

¶14    In the initial bench decision, the chief administrative judge found that the agency's evidence was strong because the SRB unanimously recommended that the appellant's employment be terminated. ID at 24-25. We agree with that conclusion.[9] Moreover, we note that reports concerning deficiencies in the appellant's patient care began to surface at least by February 2011—well before the Medical Center Director learned in the June to August 2011 timeframe that the appellant made the disclosures at issue. IAF, Tab 6 at 264, 331-36, 341-42, 364. By May 2011, the then Chief of Staff identified the appellant, among others, in an email about providers who were causing patient safety concerns and advised the Medical Center Director and other agency officials that the agency should "clos[e] the loop on [the appellant] prior to October," when the appellant's probation was to end. AF-2, Tab 25 at 28; HT-2 at 360 (testimony of the former chief of staff).

¶15    Although we discuss below the appellant's arguments regarding his theory of retaliation, we address some of his concerns regarding the circumstances surrounding the initiation of the SRB, the composition of its members, and the evidence that was presented to it, because these issues relate to the strength of the agency's evidence. For example, we have considered the appellant's assertion that the SRB was "initiated under very suspicious circumstances." PFR File, Tab 7 at 14. The chief administrative judge indicated that there was no evidence of any procedural impropriety regarding how the SRB was convened or that the

---

[9] The chief administrative judge noted in the initial bench decision that she did not have the authority to examine or alter the SRB's recommendation, but she considered evidence of procedural error or bias of any SRB members. ID at 18-19. The appellant does not appear to challenge the chief administrative judge's findings in this regard on review and we see no reason to disturb them.

SRB was created to apply only to the appellant. ID at 18-19 (finding that "the evidence was clear that the SRB was an established process used routinely by the VA"); IAF, Tab 6 at 396-403 (the agency's Handbook describing probationary period actions, including SRBs). The Associate Chief of Staff for Primary Care submitted the request for the SRB on August 19, 2011, IAF, Tab 6 at 204, which was after the Medical Center Director learned that the appellant made whistleblowing disclosures. However, there is no evidence that the Medical Center Director informed the Associate Chief of Staff for Primary Care of the disclosures; in fact, the Associate Chief of Staff for Primary Care testified that when he initiated the SRB in August 2011, he was not "aware of any complaints or concerns" that the appellant had raised regarding performance improvement or the mismanagement of Federal funds by the VISN or its director. HT-2 at 411 (testimony of the Associate Chief of Staff for Primary Care).

¶16 We also are not persuaded that the SRB was tainted because of the composition of its members. The chief administrative judge found that one member of the SRB was a primary care physician, and another member, a doctor, had performed in a primary care setting; in any event, the chief administrative judge concluded that there was no evidence that SRB members had to be from the same discipline as the subject of an SRB review. ID at 22-23. The appellant cites to no evidence on review that the chief administrative judge's conclusion was erroneous. There also does not appear to be any evidence of bias on the part of any SRB member against the appellant. For instance, the Chair of the SRB testified that he "met [the appellant] a few times in a social setting," and "liked [him] as a person." HT-1 at 87-88 (testimony of the Chair of the SRB). In addition, the SRB member who also testified that he was a primary care physician never met the appellant. HT-1 at 35-36 (testimony of the SRB member who was a primary care physician).

¶17 We have considered the appellant's assertion that the SRB was provided "fewer than 1%" of his patient files for review and that some of the files included

complaints about patient care from when he first began working at the agency in 2009. PFR File, Tab 7 at 15-16. We are not persuaded that the information provided to the SRB was improper. The chief administrative judge acknowledged that the SRB only reviewed a small portion of the appellant's patient files, but she explained that there was no evidence that the SRB's review of a small percentage of negative cases was improper or that a random sampling of cases or a different percentage of cases was required. ID at 22. Indeed, she noted that one SRB member testified that an SRB necessarily involves a review of a small percentage of cases. ID at 20; s*ee* HT-1 at 76 (testimony of the SRB member who was a primary care physician explaining that it "would take years" to review all of a physician's patient files).

¶18        Next, the appellant challenges the chief administrative judge's analysis of certain evidence. For instance, he asserts that the chief administrative judge's analysis was inconsistent with *Whitmore* because she would not speculate as to why his past performance evaluations were rated satisfactory, but he received an unsatisfactory evaluation after he made whistleblowing disclosures.[10] PFR File, Tab 7 at 9; ID at 22. *Compare* IAF, Tab 6 at 241-42; AF-2, Tab 25 at 51, *with* IAF, Tab 6 at 239-40. We disagree. The initial bench decision reflects that the chief administrative judge considered this evidence, inasmuch as she noted that an earlier performance evaluation indicated that the appellant was "satisfactory" considering that he was "new" to the agency. ID at 22; IAF, Tab 6 at 242. In fact, the comments of that August 2010 evaluation stated that the appellant "still needs to work hard on developing templates & program notes." IAF, Tab 6 at 242. Therefore, it appears that the chief administrative judge did not give the earlier evaluation much weight, given the appellant's short tenure at the agency. Moreover, the appellant does not cite, and we are not aware of, any interpretation

---

[10] The SRB was presented with information regarding the appellant's earlier evaluations. IAF, Tab 6 at 204.

of *Whitmore* that requires an administrative judge to speculate further about such evidence.[11] Thus, this argument is unavailing.[12]

¶19 The appellant also asserts that the chief administrative judge finding the former Chief of Staff to be not credible was improper because the chief administrative judge "did not rely on any particular demeanor of the witnesses." PFR File, Tab 7 at 10. This argument is unavailing. When, as here, the chief administrative judge heard live testimony, her credibility determinations must be deemed to be at least implicitly based on witness demeanor. *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009). Moreover, the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not presented such sound reasons.

¶20 In fact, we discern no error with the chief administrative judge's credibility determinations. The chief administrative judge found all of the witnesses "fully credible," except for the former Chief of Staff, because his testimony was "inconsistent with documents and other credible testimony," and he was "biased against any nonmedical personnel having involvement with medical personnel."

---

[11] As a result of the all circuit review provisions of the Whistleblower Protection Enhancement Act of 2012 and subsequent laws, we must also consider this issue with the view that the appellant ultimately may seek review of this decision before any appropriate court of appeal. *See* 5 U.S.C. § 7703(b)(1)(B).

[12] We also are not persuaded that the discrepancy in his evaluations is analogous to *Whitmore*, 680 F.3d at 1376, in which the Federal Circuit found that Mr. Whitmore had "decades of exceptional service" before he started making disclosures in 2005, which "marked the beginning of his increasingly strained relationships with [agency] officials, and how his disclosures paralleled his increasingly poor performance reviews." By contrast, the appellant's evaluations, covering the time period of October 2009 through June 2011, were satisfactory, with comments as noted above, and his August 18, 2011 proficiency report was "unsatisfactory."

ID at 16-17. It was appropriate for the chief administrative judge to make credibility determinations based on, among other things, the contradiction of the former chief of staff's version of events by other evidence and/or the witness's bias. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987); ID at 17.

¶21 The appellant asserts that the former chief of staff was in the best position to evaluate his performance because he completed some of the appellant's recent evaluations. PFR File, Tab 7 at 11-12. However, as noted above, the prior evaluations were only "satisfactory" and do not appear to reflect the former chief of staff's concerns about the appellant's performance as a physician. For example, in an email dated May 19, 2011 (prior to the appellant's protected whistleblowing disclosures) to the Medical Center Director, among other agency officials, the former chief of staff wrote concerning employees, including the appellant, who caused "[p]atient safety concerns," emphasized that the appellant's probation ended in October 2011, and advised that the agency should "clos[e] the loop" on the appellant "prior to October." *E.g.*, AF-2, Tab 25 at 28. Accordingly, we discern no error with the chief administrative judge's credibility determinations. Regarding the appellant's assertion that the SRB was not given his notes, PFR File, Tab 7 at 16, he does not explain on review what information was contained in his notes or why his attorney, who appeared before the SRB on his behalf, did not provide his notes or a summary of the information contained therein to the SRB.

¶22 In conclusion, one SRB member testified that the reason the SRB felt confident in its decision to recommend that the appellant's employment be terminated was because the information that the SRB reviewed documented various categories of problems, including heart issues, medication issues, and patient autonomy issues, which demonstrated that the appellant engaged in a "consistent pattern of a lack of quality care." HT-1 at 76 (testimony of the SRB member who was a primary care physician). The evidence supports the SRB's

conclusion and unanimous recommendation, and we agree with the chief administrative judge that the agency's evidence was strong.

> *We modify the initial bench decision to clarify that the Medical Center Director had some motive to retaliate against the appellant for his whistleblowing disclosures.*

¶23   In the initial bench decision, the chief administrative judge described the Medical Center Director as being "agitated," "irritated," and "very upset" about the appellant's complaints regarding clinical care issues, but she cited his testimony that the appellant's union involvement did not influence his decision to terminate the appellant's employment.  ID at 21, 23.  She concluded that there was "no evidence" of a retaliatory motive on the SRB members' part when they recommended termination or on the Medical Center Director's part when he adopted the SRB recommendation.  ID at 25.  We agree with the appellant, PFR File, Tab 7 at 16-17, that the chief administrative judge's analysis of this *Carr* factor was inconsistent with Board precedent based on *Whitmore*, 680 F.3d at 1370, which found that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employers."  *See also Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019) (considering under the second *Carr* factor whether there was a professional motive to retaliate); *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65 (addressing the second *Carr* factor consistent with *Whitmore* to find that the appellant's disclosures generally put higher-level management officials in a critical light by disclosing problems for which they were responsible); *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29 (addressing the second *Carr* factor consistent with *Whitmore* to find that the misconduct the appellant disclosed was egregious and generated negative publicity, thereby reflecting poorly on the general institutional interests of the agency).  We therefore modify

the initial bench decision to find that the Medical Center Director's strong, negative feelings about the appellant's whistleblowing disclosures constitute some evidence of a motive to retaliate.[13]

¶24   The appellant contends that the chief administrative judge ignored his theory of retaliation, namely that the agency fabricated performance issues to terminate him. PFR File, Tab 7 at 8-13. In this regard, the appellant asserts that the agency "hand[-]picked" the members of the SRB and the information provided to the SRB, and then relied on the SRB's decision to justify its decision to terminate him. *Id.* at 12. The appellant does not assert that any SRB members had a motive to retaliate against him; rather, he contends that the SRB was the "unwitting conduit" in the agency's retaliation. *Id.* at 13.

¶25   The U.S. Supreme Court has adopted the term "cat's paw" to describe a theory explaining instances in which a particular management official, acting because of improper animus, influences an agency official who is unaware of the improper animus when implementing a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012) (citing *Staub v. Proctor Hospital*, 562 U.S. 411 (2011)). We have considered the cat's paw theory in this matter. We are not persuaded that the Medical Center Director improperly influenced any member of the SRB. Two SRB members testified, but neither of them indicated that they were influenced by the Medical Center Director or any other agency official or that they were instructed to make a particular recommendation. HT-1 at 76 (testimony of the SRB member who was a primary care physician that "[n]o one in the room seemed to have an axe to grind [or] any personal issues"), 101 (testimony of the Chair of the SRB stating that the outcome was "fair and

---

[13] To the extent that the appellant contends that the Associate Chief of Staff for Primary Care had a motive to retaliate against him or otherwise had knowledge that he was named in one of the appellant's disclosures, PFR File, Tab 7 at 16-17, there is no evidence to support this assertion, *see supra* ¶ 15. In the absence of any such evidence, we need not consider whether the Associate Chief of Staff for Primary Care improperly influenced the SRB in any way. PFR File, Tab 7 at 13.

objective"). We also have considered the circumstantial evidence of improper influence, such as how the SRB was initiated, which members were selected, and the evidence that was presented to the SRB. However, we are not persuaded that there is evidence of a strong motive to retaliate on the part of the Medical Center Director. Indeed, if the Medical Center Director was hand-picking the SRB members, as the appellant suggests, it strains credulity that he would select the Chair of the SRB because of his prior personal relationship with the appellant. HT-1 at 87-88 (testimony of the Chair of the SRB). Moreover, the record reflects that various agency officials raised concerns about the appellant's competence months before he wrote the correspondence containing the whistleblowing disclosures and before his authorship of this correspondence was even known to the Medical Center Director. *See, e.g.*, IAF, Tab 6 at 253-54, 263-64, 318, 331, 334-36, 341-42, 364; AF-2, Tab 25 at 25-29.

¶26        Finally, we have considered the appellant's assertion that the chief administrative judge improperly applied the preponderant evidence standard when she found that it was "reasonable" for the Medical Center Director to rely on the unanimous SRB recommendation as justification for the termination action. PFR File, Tab 7 at 13-17; ID at 23-25. Clear and convincing evidence "is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e). It is a higher standard than preponderant evidence, which is "the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 42 (2016); 5 C.F.R. § 1201.4(q). Although unclear, the appellant appears to be confusing the chief administrative judge's use of the term "reasonable" with the use of the "reasonable person" standard in the definition of preponderant evidence as described in 5 C.F.R. § 1201.4(q). The chief administrative judge's use of the term "reasonable" in this regard does not—standing alone—persuade us that she

improperly applied the preponderant evidence standard in evaluating this *Carr* factor. Thus, we find that this argument is without merit.

*The agency proved that it took similar actions against employees who were not whistleblowers but who were otherwise similarly situated.*

¶27    In the initial bench decision, the chief administrative judge wrote that the agency identified a number of physicians who went before an SRB who were not whistleblowers. ID at 25. The chief administrative judge also noted that one physician was terminated and another was reassigned based on the SRB's recommendation. *Id.* We have considered the appellant's argument that two nonwhistleblower physicians who were subject to an SRB's review committed "egregious failures of patient care," and, thus, they were not similarly situated to him. PFR File, Tab 7 at 16-18. However, in *Whitmore*, 680 F.3d at 1373, the Federal Circuit advised that "the requisite degree of similarity between employees cannot be construed so narrowly that the only evidence helpful to the inquiry is completed disregarded." Thus, the court held that comparators need not be "identically situated," but only "similarly situated." *Id.* The fact that other physicians who were called before an SRB may have committed more severe failures of patient care than the appellant does not prevent them from being similarly situated to him. The agency's Handbook states that an SRB is "limited to situations where summary separation from Federal service may be justified," and it explains that the primary purpose of the SRB is "to obtain available facts and determine whether the employee is fully qualified and satisfactory." IAF, Tab 6 at 397, 399. Thus, there may be somewhat varying circumstances that lead to the convening of an SRB.

¶28    We also have considered the appellant's assertion that the chief administrative judge improperly excluded evidence of nonwhistleblowers who were treated more favorably than him. PFR File, Tab 7 at 18-20 (the appellant's objection raised during the testimony of the Acting Chief of Staff). We reviewed this portion of the hearing transcript. There, the agency objected to the

appellant's questions about the fairness of an SRB being convened for the appellant when the agency had concerns about other physicians' quality of care, and the chief administrative judge sustained the objections because there was no evidence that the witness was aware of other physicians with patient care issues. HT-1 at 128, 130-31 (the appellant's objections raised during the testimony of the Acting Chief of Staff). We discern no error with the chief administrative judge's decision to sustain the agency's objections until a proper foundation was laid for the witness to testify about quality of care concerns involving other physicians. 5 C.F.R. § 1201.41(b). Indeed, the appellant subsequently inquired about the witness's knowledge of specific physicians with whom the agency had quality of care issues, and based on the witness's affirmative answer, asked if the witness questioned why an SRB was convened for the appellant but not another physician. HT-1 at 131-35 (testimony of the Acting Chief of Staff).

Conclusion

¶29    Nothing in the whistleblower protection statutes prohibits an agency from taking an action against an employee about whom it has performance and/or conduct concerns prior to any agency official's awareness of the employee's whistleblowing disclosures. Having considered the three *Carr* factors, and the evidence and argument cited by the appellant on review, we agree with the chief administrative judge that the agency proved by clear and convincing evidence that it would have terminated the appellant during his probationary period absent his whistleblowing disclosures. Therefore, we deny his request for corrective action. The initial bench decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.

## NOTICE OF APPEAL RIGHTS[14]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[14] 14 Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[15] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[15] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                               /s/ for
                                    _____
                                    Jennifer Everling
                                    Acting Clerk of the Board
Washington, D.C.